BRICKWELL VS. HAMELE.

*February 28 — May 31, 1883.*

*City charter of Portage — Powers of street commissioner.*

1. Under the charter of the city of Portage the street commissioner may, without the action of the common council, repair a street by removing the surface earth from the higher ground therein and filling up the low places, holes, and ponds therein, and leveling the street and rounding it up so that water would run off at the sides, although the street is thereby cut down in some places as much as a foot.

2. The precise limit of the general powers conferred upon the street commissioner by such charter to proceed without previous action by the common council, must be determined in each case from the character and magnitude of the work to be done.

APPEAL from the Circuit Court for *Columbia* County.

The facts sufficiently appear from the opinion. There was a verdict for the defendant, and from the judgment entered thereon the plaintiff appealed.

*G. J. Cox,* as attorney, and *John Brickwell,* in person, for the appellant.

For the respondent there was a brief by *H. H. Curtis,* as attorney, and *George Curtis, Jr.,* of counsel, and oral argument by *Mr. H. H. Curtis.*

The following opinion was filed March 13, 1883:

ORTON, J. This action is to recover damages done to the premises of the plaintiff by the defendant in excavating and removing the earth of the street in front of the same. The defendant seeks to justify such excavation and removal on the ground that it was done by him as street commissioner of the city of Portage for the proper repair of such street. It was in evidence that the ground of the street in front of the plaintiff's lot was·higher than that north of it, and that near and north of his lot the street was very low and uneven, with holes and ponds of water, and generally wet and

muddy, and unfit for travel, and that the center of the street was the lowest, so that when it rained the water ran off there instead of at the sides of the street. There is no question but that the street was in very bad condition and greatly needed repair.

It does not appear that there was any question on the trial, raised by the testimony or the rulings of the court, whether this work was of such a character that it could be done by the street commissioner without any action by the common council of the city. By the instructions to the jury it was either taken for granted that it could be so done, or this question was submitted to the jury as a question of fact. One part of the charge was: "The duty of the street commissioner to make ordinary improvements in the streets, if he did no more, . . . in no manner affects the rights of the city;" and another: "Now, the real question in this case is a question of fact for you, or would be and is, if there is any testimony tending to show that the defendant did more than was necessary for the proper repairing of the street." It is difficult to say, from the charge, whether this fact was taken for granted or left to the jury, or either, for the jury were charged elsewhere that the defendant would be liable if he did more than was reasonably necessary to repair the street; and this was the main question left to them. We must assume that the jury found that the defendant did not do more than was necessary for such purpose, and upon sufficient evidence.

But the main and important question is first raised in this court whether this work properly came within the general powers and duties of the street commissioner, or required the action of the common council. This is a mixed question of law and fact; but, perhaps, more of law than fact, the facts being found. It was treated as a question of law by this court in the recent case of *Wallich v. City of Manitowoc, ante*, p. 9. The question in that case was whether

the work was of such a character as to require a petition signed by resident property owners, and other steps to be taken to authorize the board of aldermen to act in the matter under the charter of the city as a *grading* of the street, or whether it might be done by the city authorities without such petition and preliminary action as a work of *partial repairs*. The judgment was reversed because the circuit court refused to grant a nonsuit in the case on the ground that the work came within the designation of " common repairs," as defined by the charter, and that no petition was required or other formal action. It is difficult to say that this question was passed upon by the jury or the court, and it does not appear that it was raised by counsel on the trial.

It is, certainly, a very important question, when, as in this case, the work done on the street was of considerable magnitude and expense, whether it may be done within the judgment and discretion of the street commissioner and by his order alone, or requires the more formal, guarded, and responsible action of the common council, as provided in the charter for greater, more important, and expensive works of street repair and improvement. The work done by the street commissioner was in removing the surface earth from the higher ground in the street in front of the plaintiff's lot, and filling up the low places, holes, and ponds near his lot, and opposite the lot or lots of other owners, and in leveling the street and rounding it up so that the water would pass off at the sides, and in making the street generally passable. In doing this work the street in front of the plaintiff's lot was cut down, perhaps, on an average of one foot.

The charter of the city of Portage, found in ch. 122, Laws of 1876, in subch. 6, sec. 1, provides that " the common council shall have power to order and contract for the making, grading, *repairing*, and cleaning streets," etc., "and direct and control the persons employed therein." Sec. 8 provides that " the general powers and duties of the street commis-

sioner shall be the same as those of overseers of highways in towns, except as otherwise herein provided." Sec. 10 requires him to render an account of money collected by him, showing the amount expended, and specifying the *work* for which it was expended, and the amount of *labor performed* in payment of highway taxes, and when performed. Sec. 12 exempts the city from all liability "for any services *ordered* to be performed by the street commissioner, unless provision is made for paying therefor at the time such services *are ordered.*"

These provisions clearly authorize the street commissioner to order considerable work to be done in repairing streets and alleys, etc., and to employ others to do it under his supervision, and to pay for such work with moneys in his hands for such purpose, without any action of the common council. On the other hand, there may be *repairs* of such magnitude and importance as require the action of the common council, and the work to be let by contract to the lowest bidder, and notice to be given to the owners of adjoining lots, as provided in the charter.

There is a line or limit somewhere, which must be found in the very character of the work of repairs and improvement of streets to be done, beyond which "the general powers and duties of the street commissioner" do not extend, and where the powers and duties of the common council begin. The charter has failed to draw that line so as to be clearly observable, and it must, therefore, be found, in any given case, by the exercise of a reasonable judgment, and when so found as the dividing line between the most important and expensive of common or ordinary repairs and the least important of extraordinary repairs, the former being within the powers and duties of the street commissioner and the latter requiring the action of the common council, it must of necessity be somewhat arbitrary. Again, certain repairs of considerable magnitude and involving con-

siderable expense may be of such urgent necessity as to require immediate attention, and which cannot await the formal and dilatory action of the common council in giving the proper notices and in letting contracts. Such exigencies and emergencies may somewhat enlarge the powers and duties of the street commissioner in respect to such works which might otherwise be properly done in the more formal manner required by the common council. Under this charter the question is made more difficult to decide because certain "repairing" must be done by the common council.

As the conclusion of the whole matter, we can say, without question, that the work of repairs, in this instance, was clearly within the powers and duties of the street commissioner, although it must be admitted very near the limit of his authority, and did not require the action of the common council. This being so, the exceptions in respect to evidence relating to damages need not be considered. The work being proper to be done by the defendant as street commissioner, his right to remove earth from the street in front of the plaintiff's premises to other parts of the street, if necessary for such repairs, follows as of course. Such a right in the overseer of a highway would be unquestionable, and the defendant's right in said office is made the same by the charter, in respect to repairs within his authority. But the real question has been recently decided by this court in *Huston v. City of Fort Atkinson*, 56 Wis., 350. This disposes of the case on this appeal.

We regret the necessity of considering a question so important, which was not directly raised at the trial, but there was a motion for a new trial on the ground that the verdict was against the evidence, and the question was fully and fairly presented in the briefs of the counsel on both sides, and its decision required. In all other respects the charge of the court was full and fair, and, although somewhat obscure and involved, did not, probably, mislead the

jury.   The verdict was right, and there was no error in the record which ought to reverse the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied May 31, 1883.